**ARENSON, DITTMAR & KARBAN**
AVI MERMELSTEIN (N.J. ATTORNEY ID# 907892012)
200 Park Avenue, Suite 1700
New York, NY 10166
Tel: (212) 490-3600
Attorneys for Plaintiffs and the Putative Classes

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ------------------------------------------------------------- X | | |
| **OUSMANE SAWADOGO, THEOPHILE OUBDA, OUSMANE DIARRA, ADBOUL ILBOUDO, FRANCK T. VINCENT, and ABDOUL RAZAK SAMBARE on behalf of themselves and all others similarly situated** | \| \| \| \| \| \| | **Civil Action** |
| **Plaintiffs,** | \| \| | **Index No.: 20-CV-1196** |
| - against - | \| \| \| | |
| **ZAP LUBE & CAR WASH, INC., ZAP AUTOMOTIVE CORP., UNDERWEST MANAGEMENT CORP., BLOOMFIELD CAR WASH & LUBE CORP., WASHINGTON STREET AUTO REPAIR CORP., 378-392 WASHINGTON STREET CAR WASH, INC., BROAD & EMMET CAR WASH CORP., 1090 OPERATING CORP., 1096 ATLANTIC OPERATING CORP., BARAK SPEEDY LUBE, INC., ONE & NINE CARWASH & LUBE INC., UNION CITY CAR WASH INC., MOSHE WINER, MARTIN TAUB, AVI GOLAN, LIOR RONNER, and ALON LEVY,** | \| \| \| \| \| \| \| \| \| \| \| \| \| \| \| \| \| | |
| **Defendants,** | \| \| | |
| ------------------------------------------------------------- X | | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Ousmane Sawadogo, Theophile Oubda, Ousmane Diarra, Abdoul Ilboudo, Franck T. Vincent, and Abdoul Razak Sambare (collectively, the "Named Plaintiffs"), individually and on behalf of those similarly situated (collectively "Plaintiffs"), by and through their attorneys, Arenson, Dittmar & Karban (with an office and mailing address of 200 Park Avenue, Suite 1700, New York, NY 10166), as and for their Complaint against Defendants Zap Lube & Car Wash, Inc., Zap Automotive Corp., Underwest Management Corp., Bloomfield Car Wash & Lube Corp., Washington Street Auto Repair Corp., 378-392 Washington Street Car Wash, Inc., Broad & Emmet Car Wash Corp., 1090 Operating Corp., 1096 Atlantic Operating Corp., Barak Speedy Lube, Inc., One & Nine Carwash & Lube Inc., Union City Car Wash, Inc., (collectively, "Corporate Defendants"), Moshe Winer ("Winer"), Martin Taub ("Taub"), Avi Golan ("Golan"), Lior Ronner ("Ronner"), and Alon Levy ("Levy"), (collectively, "Individual Defendants" and, together with Corporate Defendants, "Defendants") upon personal knowledge as to themselves and upon information and belief, allege as follows:

## NATURE OF THE ACTION

1.    This action arises out of Defendants' failure to pay Plaintiffs the minimum wage, overtime compensation, and other monies, as required by the Fair Labor Standards Act, 29 U.S.C §§ 201, *et seq.*, ("FLSA"), the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a4 *et seq.* ("NJWHL"), and the New York Labor Law, N.Y. LAB. LAW §§ 190, *et seq.*, § 650, *et seq.* ("NYLL").

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to pursuant to 28 U.S.C.

§ 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3.   This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

4.   Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b), because all or a substantial part of the events or omissions giving rise to the claims occurred in the District of New Jersey.

### PARTIES

5.   Plaintiffs Sawadogo, Oubda, Diarra and Ilboudo are individuals residing in the State of New Jersey, Essex County who were or are employees of Defendants.

6.   Plaintiffs Vincent and Sambare are individuals residing in the State of New York who were employees of Defendants. Upon information and belief, Defendants Winer and Taub are, or have been, the owners and operators of approximately seven Zap Car Wash and Lube locations, including two located in Newark, New Jersey at 1196 Broad Street and 390 Washington Street. Defendants also formerly owned a location at 312 Bloomfield Avenue in Newark until approximately 2018. Out of the remaining locations, three are in New Jersey and two in New York. The three New Jersey locations are: 37-14 Broadway in Fairlawn; 6900 Tonnelle Avenue in North Bergen; and 1500 Kennedy Boulevard in Union City. The two New York locations are: 1096 Atlantic Avenue in Brooklyn and 115 Bruckner Boulevard in the Bronx.

7.   Defendant Underwest Management Corp. is a New Jersey corporation with a registered agent and office address of Moshe Winer, 600 Sylvan Avenue, Suite #407, Englewood Cliffs, NJ 07632.

8.   Defendant Zap Lube & Car Wash, Inc. is a New Jersey corporation with a registered agent and office address of Moshe Winer, 600 Sylvan Avenue, Suite #407, Englewood Cliffs, NJ 07632.

9.   Defendant Zap Automotive Corp. is a New Jersey corporation with a registered agent and office address of Moshe Winer, 600 Sylvan Avenue, Suite #407, Englewood Cliffs, NJ 07632.

10.  Defendant Bloomfield Car Wash & Lube Corp. is a New Jersey corporation with a registered agent and office address of Martin Taub, 1196 Broad Street, Newark, NJ 07114. That address is the location of a Zap carwash and oil change shop.

11.  Defendant Washington Street Auto Repair Corp. is a New Jersey corporation with a registered agent and office address of Martin Taub, c/o Washington Auto Repair, 390 Washington Street, Newark, NJ 07102. That address is the location of a Zap carwash, oil change shop, and auto repair shop.

12.  Defendant 378-392 Washington Street Car Wash, Inc. is a New Jersey corporation with a registered agent and office address of Martin Taub, 1196 Broad Street, Newark, NJ 07114. That address is the location of a Zap carwash and oil change shop.

13.  Defendant Broad & Emmet Car Wash Corp. is a New Jersey corporation with a registered agent and office address of Martin Taub, c/o Broad & Emmet CW Corp, 1196 Broad Street, Newark, NJ 07114. That address is the location of a Zap carwash and oil change shop.

14.  Defendant 1090 Operating Corp. is a New York corporation with a principal executive office located at 1090 Atlantic Avenue, Brooklyn, New York—the site of a Zap carwash

and oil change shop. Its address for process is 600 Sylvan Avenue, Suite #407, Englewood Cliffs, NJ 07632. Martin Taub is its Chief Executive Officer.

15. Defendant 1096 Atlantic Operating Corp. is a New York corporation with a principal executive office located at 1096 Atlantic Avenue, Brooklyn, New York—an alternate address for the site of same Zap carwash and oil change shop as 1090 Atlantic Avenue. Its address for process is 600 Sylvan Avenue, Suite #407, Englewood Cliffs, NJ 07632. Martin Taub is its Chief Executive Officer.

16. Defendant Barak Speedy Lube, Inc. is a New York corporation with a principal executive office located at 115 Bruckner Boulevard, Bronx, New York which is or has been the site of a Zap carwash and oil change shop. Its address for process is c/o Underwest Mgmt, 600 Sylvan Avenue, Suite #407, Englewood Cliffs, NJ 07632. Martin Taub is its Chief Executive Officer.

17. Defendant One & Nine Carwash & Lube Inc. is a New Jersey corporation with a registered agent and office address of Moshe Winer, 600 Sylvan Avenue, Suite #407, Englewood Cliffs, NJ 07632.

18. Defendant Union City Car Wash, Inc. is a New Jersey corporation with a registered agent and office address of Moshe Winer, 600 Sylvan Avenue, Suite #407, Englewood Cliffs, NJ 07632.

19. Upon information and belief, at all relevant times, each of the Corporate Defendants has had gross sales or business in excess of $500,000 annually.

20. Upon information and belief, Corporate Defendants are each engaged in interstate commerce, by, inter alia, using cleaning and maintenance supplies, car parts, machinery, and tools obtained via interstate commerce in its carwashes, oil change shops, auto repair

shops, and convenience stores. In addition, upon information and belief, the Corporate Defendants provide services to customers from states other than New York and New Jersey on a regular basis.

21.   Upon information and belief, Defendant Winer is a resident of the State of New Jersey and at all relevant times was the President of Corporate Defendants.

22.   Upon information and belief, Defendant Taub is a resident of the State of New York and the Chief Executive Officer of a number of the Corporate Defendants.

23.   Upon information and belief, Defendant Ronner is a resident of the State of New Jersey and at various times during the relevant period was a manager and/or partner of Defendants Winer and Taub in one or more of the Corporate Defendants.

24.   Upon information and belief, Defendant Levy is a resident of the State of New Jersey and at all relevant times has been a manager and/or the general manager of the Corporate Defendants.

25.   Upon information and belief, Defendant Golan is a resident of the State of New Jersey and has been a manager and/or the general manager at a number of locations at which Plaintiffs worked.

## <u>COLLECTIVE ALLEGATIONS</u>

26.   Plaintiffs Sawadogo, Oubda, Diarra, Ilboudo, and Vincent (the "Collective Plaintiffs") bring the second claim in this action against Defendants as a collective action pursuant to the F.L.S.A., 29 U.S.C. § 216(b), on behalf of themselves and all other similarly-situated current and former non-exempt employees who have worked, and/or continue to work, for Defendants at any time during the three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective").

27. In addition, Plaintiffs Sawadogo, Oubda, and Ilboudo bring the third claim in this action against Defendants as a collective action pursuant to the F.L.S.A., 29 U.S.C. § 216(b), on behalf of themselves and all other similarly-situated current and former non-exempt employees who have performed or will perform non-managerial work at one of Defendants' car washes, auto repair shops, and/or oil change shops during the three years prior to the filing of this action through the entry of judgment in this action and are employees who customarily and regularly receive gratuities or tips (the "FLSA Tipped Employee Subclass").

28. At all relevant times, the Collective Plaintiffs and the FLSA Collective have been similarly situated, have been governed by similar pay practices and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in Defendants' willful failure and refusal to pay the Collective Plaintiffs, among other things, overtime compensation required by the FLSA.

29. At all relevant times, Plaintiffs Sawadogo, Oubda, and Ilboudo and the FLSA Tipped Employee Subclass have been similarly situated, have been governed by similar pay practices and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful retention of their tips.

30. Defendants are liable under the FLSA for, inter alia, failing to properly compensate Collective Plaintiffs and the FLSA Collective, including the FLSA Tipped Employee Subclass, and as such, notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

31. The FLSA Collective and the FLSA Tipped Employee Subclass each consists of numerous similarly-situated current and former employees of Defendants who were subject to the conduct complained of herein and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the action. Those similarly-situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ALLEGATIONS

32. This action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### New Jersey Class and Subclass

33. The first proposed class consists of all employees of Defendants who have performed or will perform non-managerial work at one of Defendants' car washes, auto repair shops, oil change shops, and/or convenience stores in New Jersey during the six years prior to the filing of this action through the entry of judgment in this action (the "Putative NJ Class").

34. Plaintiffs Sawadogo, Oubda, Diarra, and Ilboudo (the "NJ Class Representatives") are each members of the Putative NJ Class and seek to represent it.

35. Plaintiffs Sawadogo and Oubda (the "NJ Subclass Representatives") also seek to represent a subclass consisting of employees of Defendants who have performed or will perform non-managerial work at one of Defendants' car washes, auto repair shops, oil change shops and/or convenience stores in New Jersey during the six years prior to the filing of this action through the entry of judgment in this action and are employees who customarily and regularly receive gratuities or tips (the "NJ Tipped Employee Subclass").

8

36. The NJ Subclass Representatives are each members of the proposed NJ Tipped Employee Subclass.

37. The Putative NJ Class and proposed NJ Tipped Employee Subclass are each so numerous that joinder of all members is impracticable.

38. The precise sizes of the Putative NJ Class and proposed NJ Tipped Employee Subclass are unknown to Plaintiffs. The facts on which the calculation of that number can be based presently are within the sole control of the Defendants.  In addition, the names of all potential members of the Putative NJ Class and proposed NJ Tipped Employee Subclass are not known to Plaintiffs.

39. Upon information and belief, the size of the Putative NJ Class is in excess of 40 individuals.

40. Upon information and belief the size of the proposed NJ Tipped Employee Subclass is in excess of 40 individuals.

41. The questions of law and fact common to the Putative NJ Class and the NJ Tipped Employee Subclass predominate over any questions affecting only individual members. Such questions include:

   a. Whether Defendants failed to pay members of the NJ Tipped Employee Subclass the minimum wage, pursuant to the NJWHL;

   b. Whether the paystubs issued by Defendants to members of the Putative NJ Class included all hours worked;

   c. Whether, when calculating overtime compensation owed to members of the Putative NJ Class, Defendants failed to include commission payments made to members of the Putative NJ Class in the members' regular rates;

d.  Whether Defendants failed to pay members of the Putative NJ Class at one and one-half time their regular rates for all hours worked in excess of forty (40) each week;

e.  Whether Defendants failed to pay members of the Putative NJ Class overtime compensation, pursuant to the NJWHL;

f.  Whether Defendants failed to adhere to the recordkeeping requirements of the NJWHL and the applicable regulations;

g.  Whether Defendants unlawfully retained tips of the members of the NJ Tipped Employee Subclass in violation of the NJWHL;

h.  Whether Defendants improperly claimed a tip credit for members of the NJ Tipped Employee Subclass;

i.  Whether the Defendants are liable for damages claimed hereunder, including but not limited to compensatory damages, interest, liquidated damages, costs and disbursements and attorneys' fees; and

j.  Whether the Defendants should be enjoined from engaging in such practices in the future.

42.  The claims of the NJ Class Representatives are typical of the claims of the Putative NJ Class.

43.  The claims of NJ Subclass Representatives are typical of the claims of the proposed NJ Tipped Employee Subclass.

44.  The NJ Class Representatives and their counsel will fairly and adequately protect the interests of the Putative NJ Class.

45.  The NJ Subclass Representatives and their counsel will fairly and adequately protect the interests of the proposed NJ Tipped Employee Subclass.

46.     A class action is superior to other available methods for the fair and efficient adjudication

of this controversy. Besides the predominance of questions common to the Putative NJ

Class and NJ Tipped Employee Subclass, individual Class members lack the resources to

undertake the burden and expense of individual prosecution of these claims against

Defendants, especially in comparison with some of the maximum individual recoveries to

which each Class member would be entitled. Individualized litigation increases the delay

and expense to all parties and multiplies the burden on the judicial system presented by the

legal and factual issues of this case. It also presents a potential for inconsistent or

contradictory judgments. In contrast, the Class action device presents far fewer

management difficulties and provides the benefits of a single adjudication, economy of

scale, and comprehensive supervision by a single court on the issue of Defendants'

liability.

**New York Class**

47.     The second proposed class consists of all employees of Defendants who have performed or

will perform non-managerial work at one of Defendants' car washes, oil change shops,

and/or convenience stores in New York during the six years prior to the filing of this action

through the entry of judgment in this action (the "Putative NY Class").

48.     The Putative NY Class is so numerous that joinder of all members is impracticable.

49.     The precise size of the Putative NY Class is unknown to Plaintiffs. The facts on which the

calculation of that number can be based presently are within the sole control of the

Defendants.  In addition, the names of all potential members of the Putative NY Class are

not known to Plaintiffs.

50. Upon information and belief, the size of the Putative NY Class is in excess of 40 individuals.

51. Plaintiffs Vincent and Sambare are members of the Putative NY Class and seek to represent it.

52. The questions of law and fact common to the Putative NY Class predominate over any questions affecting only individual members. Such questions include:

   a. Whether Defendants failed to pay members of the Putative NY Class the minimum wage, pursuant to the NYLL;

   b. Whether the paystubs issued by Defendants to members of the Putative NY Class included all hours worked;

   c. Whether, when calculating overtime compensation owed to members of the Putative NY Class, Defendants failed to include commission payments made to members of the Putative NY Class in the members' regular rates;

   d. Whether Defendants failed to pay members of the Putative NY Class at one and one-half time their regular rates for all hours worked in excess of forty (40) each week;

   e. Whether Defendants failed to pay members of the Putative NY Class overtime compensation, pursuant to the NYLL;

   f. Whether Defendants failed to furnish the members of the Putative NY Class with the wage statement(s) required by NYLL § 195(3);

   g. Whether Defendants failed to adhere to the recordkeeping requirements of the NYLL and the applicable regulations; and

> h.   Whether the Defendants are liable for damages claimed hereunder, including but not limited to compensatory damages, interest, liquidated damages, costs and disbursements and attorneys' fees.

53.   The claims of Plaintiffs Vincent and Sambare are typical of the claims of the Putative NY Class.

54.   Plaintiffs Vincent and Sambare and their counsel will fairly and adequately protect the interests of the Putative NY Class.

55.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Besides the predominance of questions common to the Putative NY Class, individual Class members lack the resources to undertake the burden and expense of individual prosecution of these claims against Defendants, especially in comparison with some of the maximum individual recoveries to which each Class member would be entitled. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the legal and factual issues of this case. It also presents a potential for inconsistent or contradictory judgments. In contrast, the Class action device presents far fewer management difficulties ad provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

## STATEMENT OF FACTS

### FACTS COMMON TO ALL PLAINTIFFS

56.   Upon information and belief, for at least approximately the past twenty years, Defendants have employed numerous individuals as car washers, cleaners, driers, detailers, oil

changers, body shop workers, convenience store workers and other occupations related to the business of the servicing and maintenance of automobiles.

57. Many of these individuals are and have been employees that "customarily and regularly receive tips" as that term is defined under 29 U.S.C. §§ 203 (m), (t), and the regulations and case law interpreting the same.

58. Upon information and belief, Defendants Taub and Winer have made the decisions for Corporate Defendants, including decisions regarding hiring, firing, payment of wages, assignment and scheduling of work, contractual matters, and all other administrative and company policy matters, either directly or through agents.

59. Upon information and belief, Defendants Taub and Winer have actively managed, supervised, and directed, and continue to actively manage, supervise and direct, the business and operations of Corporate Defendants, either directly or through agents.

60. Upon information and belief, Defendants Taub and Winer have maintained records of Plaintiffs' employment and pay, either directly or through agents.

61. Corporate Defendants have used employees to work for multiple entities simultaneously. For example, Defendants frequently instructed one or more employees who primarily worked at the Washington Street car wash nominally owned by 378-392 Washington Street Car Wash, Inc., to work shifts at two of Defendants' other car washes nominally owned by separate entities: one located on Broad Street and owned by Broad & Emmet Street Car Wash Corp., and the other on Bloomfield Avenue, owned by Bloomfield Car Wash & Lube Corp.

62. Defendants similarly directed one or more employees who primarily worked at the Broad Street lube service center to work shifts at the Bloomfield Avenue lube service center.

14

63. When requiring more labor for a particular week or day, a manager of one entity would contact managers of other entities or the General Manager to ask that additional workers be sent to his entity from the other entities.

64. Defendants trained managers at one location nominally owned by one of Defendants' entities and then deployed them as managers at another location nominally owned by a different one of Defendants' entities.

65. Defendants Taub and Winer have set up a common management structure for Corporate Defendants. For example, in or around the early part of 2018, Taub and Winer appointed Defendant Golan as General Manager to manage and oversee operations at all locations.

66. Upon information and belief, all employment applications to the Corporate Defendants were processed or approved by the same corporate office and all major decisions were cleared with Defendants Taub and Winer.

67. During the relevant claim period, employees of the Corporate Defendants have regularly seen Taub personally visiting their locations. Taub frequently consults with and gives instructions to the on-site managers and other employees, who then implement his directives.

68. For example, during the relevant claim period, Taub monitored the sales at various locations owned and operated by the Corporate Defendants on a daily basis, communicating with employees via text message about the amount of sales generated.

69. By way of further example, Taub made inquiries and decisions concerning the employment of individual employees.

70. One or more of the Named Plaintiffs have seen Winer at the Washington Street carwash location, checking the operation of the car wash and the other businesses located there, on many occasions.

71. Winer also communicated with managers about practices governing employee compensation and the operation of the businesses of the Corporate Defendants.

72. Winer and Taub also organized dinners in which managers and employees from the various Corporate Defendants were brought together.

73. In sum, Defendants Taub and Winer have exercised complete dominion and control over the Corporate Defendants.

74. During the relevant claim period, Defendant Levy was actively involved in the day-to-day operation and management of one or more of the Corporate Defendants. Among other things, he hired employees—including, but not limited to, managers—set compensation for individual employees and managers, implemented pay practices, assigned work, made decisions regarding the location at which employees worked and transported workers from one of Defendants' locations to another.

75. During the relevant claim period, Defendant Ronner was actively involved in the day-to-day operation and management of one or more of Corporate Defendants. Among other things, he regularly was and is on site at one or more of the Defendants' locations, fires employees, implements pay practices, assigns work, and makes decisions regarding the location at which employees worked.

76. Upon information and belief, Ronner and Levy were partners with Taub and Winer and/or had an ownership interest in one or more of the Corporate Defendants.

77.  Upon information and belief, a single driver drove to all of Defendants' carwash and oil change locations on a weekly basis to give the manager checks for distribution to employees pick up weekly cash revenues and deliver such cash to Defendants' central office.

78.  All of Defendants' Zap Car Wash and Lube locations (some of which also include auto repair shops and/or convenience stores) and their business hours are or were listed on a website owned and controlled by Defendants or their agents: zapcarcare.com. The website presents these locations as being operated and under the control of a family-owned and operated business identified as ZAP Car Wash. The website includes a map of all the locations. The website lists one address for the "Contact Us" information: 3220 Arlington Avenue, Suite 3, Bronx, NY 10463. The "Contact Us" section also lists one phone number and one email address (info@zapcarcare.com).

79.  The signage of all of Defendants' car wash and lube locations used the same logo consisting of the word "ZAP" written in a stylized lightning font and surrounded by one or more bolts of lightning. This logo is also used on the zapcarcare.com website, itself. The signage, logo, and background at the locations and on the website all use a combination of at least two of the following colors: white, green, and red.

80.  Upon information and belief, Defendants operate out of a centralized corporate office, previously located at 3220 Arlington Avenue, Suite 3, Bronx, NY 10463 and currently located at 600 Sylvan Avenue, Suite #407, Englewood Cliffs, NJ 07632.

81.  All Corporate Defendants constitute a single integrated enterprise majority-owned, operated and controlled by Taub and Winer.

82. Upon information and belief, at all relevant times, Defendants acted as Plaintiffs' employers, within the meaning contemplated pursuant to 29 U.S.C. § 203(d), N.J.S.A. §§ 34:11-56a1, and NYLL § 651(6).

83. Upon information and belief, at all relevant times, Plaintiffs were, and one of the Named Plaintiffs continues to be, employees of Defendants, within the meaning contemplated pursuant to 29 U.S.C. § 203(e), N.J.S.A. §§ 34:11-56a1, and NYLL § 651(5).

84. Upon information and belief, at all relevant times, the activities of the Corporate Defendants constituted an "enterprise," within the meaning of Sections 3(r) and 3(s) of the FLSA, 29 U.S.C.§§ 203(r), (s).

85. Upon information and belief, the Corporate Defendants are each and collectively an "enterprise engaged in commerce" within the meaning contemplated pursuant to 29 U.S.C. § 201 *et seq.*, and the cases interpreting it.

86. Upon information and belief, Defendants Taub and Winer managed and exercised control over Named Plaintiffs, either directly or through agents.

87. Upon information and belief, Plaintiffs regularly were required to perform work for Defendants without receiving proper minimum wages as required by applicable federal, New Jersey, and New York law.

88. Upon information and belief, Plaintiffs regularly were required to perform work for Defendants without receiving overtime compensation as required by applicable federal, New Jersey, and New York law.

89. Upon information and belief, the payments made to Plaintiffs by Defendants constitute "wages" as that term is defined under 29 U.S.C. § 203(m), N.J.S.A. §§ 34:11-56a1, and NYLL § 651.

90. Upon information and belief, Defendants engaged in a regular pattern and practice of permitting the unlawful taking of tipped employees' earned tips by management employees in violation of the FLSA.

91. Upon information and belief, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA, NJWHL, and NYLL by failing to maintain proper and complete timesheets or payroll records.

92. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly have engaged in a policy, pattern, and/or practice of violating the FLSA, NJWHL, and NYLL. This policy, pattern, and/or practice has included but is not limited to:

   a. failing to pay Plaintiffs the proper overtime compensation at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek;

   b. failing to record on Plaintiffs' paystubs all hours worked in excess of forty (40) in a workweek;

   c. failing to include any commissions earned by Plaintiffs in the regular rates Defendants used to calculate Plaintiffs' overtime rates;

   d. failing to pay all tips received by its tipped employees to those employees in occupations which "customarily and regularly receive tips" by permitting the taking of tips and gratuities by management personnel; and

   e. failing to provide legally required notice of the FLSA tip credit provisions.

93. Defendants have persisted in these violations even after other employees at a different location in New York sued them for wage and hour violations. That action, *Hilaire, et al. v. Underwest Westside Operating Corp.*, No. 19-CV-3169 (PAE) (RWL), was filed in the Southern District of New York on April 9, 2019 and is ongoing.

**PLAINTIFF OUSMANE SAWADOGO**

94. Defendants employed Plaintiff Sawadogo from approximately March 10, 2015 through approximately February 14, 2018.

95. During that time, he worked at Defendants' car wash located at 390 Washington Street in Newark, New Jersey, which was called High Tech Car Wash.

96. At various times during Plaintiff Sawadogo's employment with Defendants, Defendants Ronner and Levy would frequently send him to work at some of Defendants' other car washes located at 1196 Broad Street, Newark, New Jersey and at 312 Bloomfield Avenue, Newark, New Jersey.

97. Throughout his employment with Defendants, Plaintiff Sawadogo typically worked between approximately 60 to approximately 80 hours per week.

98. Throughout his employment, Defendants failed to pay Plaintiff Sawadogo the proper minimum wage. Defendants typically paid Plaintiff Sawadogo approximately $350 per week.

99. Defendants paid Plaintiff Sawadogo in cash and did not furnish him with any pay stubs.

100. Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Sawadogo and his co-workers.

101. Throughout his employment, Defendants never advised Plaintiff Sawadogo of the tip credit provisions pursuant to the FLSA and the cases interpreting it. Furthermore, they did not inform him of either the state or federal minimum wage or explain anything to him about their pay practices or state or federal wage laws.

102. Throughout his employment, Defendants failed to pay Plaintiff Sawadogo the proper overtime compensation at the rate of one-and-one-half times the regular rate for work in excess of forty (40) hours per workweek.

### PLAINTIFF THEOPHILE OUBDA

103. Defendants employed Plaintiff Oubda from approximately March 2012 through approximately August 2017.

104. During that time, he worked at Defendants' car wash located at 390 Washington Street in Newark, New Jersey, which was called High Tech Car Wash.

105. Plaintiff Oubda typically worked at least 75 hours per week.

106. Typically, Defendants paid Plaintiff Oubda by check for up to 45 hours worked per week.

107. For the number of hours in excess of 40 acknowledged on the paystubs, Defendants paid Plaintiff Oubda at a rate of 1.5 times the hourly rate Defendants used for his first 40 hours. For the hours he worked in a week beyond 45, Plaintiff Oubda received cash payments from the Defendants based on the same hourly rate Defendants used for his first 40 hours.

108. At the beginning of Plaintiff Oubda's employment with Defendants, Defendants typically paid Plaintiff Oubda $7.25 per hour worked, including hours that exceeded 40 in a week, with the exception of the up to 5 hours of overtime acknowledged on his paystubs, for which he received 1.5 times his regular hourly rate.

109. Beginning in approximately 2014, Defendants typically paid Plaintiff Oubda $7.75 per hour worked, with the exception of the up to 5 hours of overtime acknowledged on his paystubs, for which he received 1.5 times his regular hourly rate.

110. For the hours he worked in a week beyond the number of hours Defendants acknowledged on Plaintiff Oubda's paystubs, Defendants paid Plaintiff Oubda in cash at the same hourly rate Defendants used for his first 40 hours.

111. Defendants unlawfully permitted management personnel to improperly take and retain tips earned by Plaintiff Oubda.

112. Throughout his employment, Defendants never advised Plaintiff Oubda of the tip credit provisions pursuant to the FLSA and the cases interpreting it.

113. Throughout his employment, Defendants failed to pay Plaintiff Oubda the proper overtime compensation at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek.

**PLAINTIFF OUSMANE DIARRA**

114. Defendants employed Plaintiff Diarra from approximately May 2014 through approximately May 26, 2018.

115. During that time, he worked at Defendants' auto repair shop located at 390 Washington Street, Newark, New Jersey.

116. From approximately May 2014 through approximately June 2017, Plaintiff Diarra typically worked at least 58 hours per week.

117. From approximately July 2017 through his termination, Plaintiff Diarra typically worked at least 45 hours per week.

118. From approximately May 2014 through June 2015 Defendants paid Plaintiff Diarra at an hourly rate of $8.25 per hour for each hour worked, including hours that exceeded forty (40) in a week. Approximately $150 of that total amount paid was paid in cash; the rest was paid via check.

119. From approximately July 2015 until approximately July 2017 Defendants paid Plaintiff Diarra a flat rate of $650 per week.

120. From approximately July 2017 through his termination, Defendants paid Plaintiff Diarra a flat rate of $580 per week.

121. Plaintiff Diarra's paystubs do not indicate the number of hours he worked.

122. Throughout his employment, Defendants failed to pay Plaintiff Diarra the proper overtime compensation at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek.

**PLAINTIFF ABDOUL ILBOUDO**

123. Defendants have employed Plaintiff Ilboudo from approximately October 29, 2018 through the present. They also previously employed him from approximately 2008 through approximately 2012.

124. Plaintiff Ilboudo works at Defendants' lube service center located at 1196 Broad Street in Newark, New Jersey.

125. Plaintiff Ilboudo typically works at least 56 hours per week.

126. When Plaintiff Ilboudo began working for Defendants in October 2018, Defendants paid Plaintiff Ilboudo approximately $8 per hour for each hour worked, including hours that exceeded 40 in a week.

127. Defendants currently pay Plaintiff Ilboudo by check for up to 47 hours worked per week. For the first 40 hours acknowledged on the paystubs, Defendants now pay Plaintiff Ilboudo $10 per hour. For the number of overtime hours acknowledged on the paystubs, Defendants pay Plaintiff Ilboudo at a rate of $15 per hour. For the hours he works in a week beyond the number of hours Defendants acknowledge on Plaintiff Ilboudo's paystubs, Defendants pay

Plaintiff Ilboudo by cash in an amount typically less than $10 per hour and sometimes less than $5 per hour.

128. Defendants unlawfully permit management personnel to improperly take and retain tips earned by Plaintiff Ilboudo.

129. Plaintiff Ilboudo regularly earns at least $60 per week in commissions. Defendants have failed and continue to fail to include these commissions as part of Plaintiff Ilboudo's regular rate for the purpose of calculating Plaintiff Ilboudo's overtime rate.

130. Throughout his employment, Defendants have failed to pay Plaintiff Ilboudo the proper overtime compensation at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek.

### PLAINTIFF FRANCK T. VINCENT

131. Defendants employed Plaintiff Vincent from at least approximately 2013 through approximately January 2019.

132. During that time, he worked at Defendants' car wash located at 1096 Atlantic Avenue in Brooklyn, New York.

133. Plaintiff Vincent typically worked at least 46 hours per week.

134. Typically, Defendants paid Plaintiff Vincent by check for up to 41.33 hours worked per week.

135. For the number of hours in excess of 40 acknowledged on the paystubs, Defendants paid Plaintiff Vincent at a rate of 1.5 times the hourly rate Defendants used for his first 40 hours. For the hours he worked in a week beyond 41.33, Plaintiff Vincent received cash payments from the Defendants based on the same hourly rate Defendants used for his first 40 hours.

136. Typically, Defendants paid Plaintiff Vincent approximately between $13-$20 in cash for the overtime hours he worked that they did not pay by check.

137. Throughout his employment, Defendants failed to pay Plaintiff Vincent the proper overtime compensation at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek.

**PLAINTIFF ABDOUL RAZAK SAMBARE**

138. Defendants employed Plaintiff Sambare from approximately 2003 through approximately June 2017.

139. During that time, he worked at Defendants' car wash located at 1096 Atlantic Avenue in Brooklyn, New York through approximately February 2016.

140. Plaintiff Sambare typically worked at least 48 hours per week.

141. During his time working at 1096 Atlantic Avenue, Defendants typically paid Plaintiff Sambare $9 per hour.

142. Typically, Defendants paid Plaintiff Sambare by check for up to 40 hours worked per week.

143. For the number of hours in excess of 40 acknowledged on the paystubs, Defendants paid Plaintiff Samabre at a rate of 1.5 times the hourly rate Defendants used for his first 40 hours. For the hours he worked in a week beyond 40, Plaintiff Sambare typically received between approximately $30 and approximately $40 in cash payments from the Defendants.

144. From approximately January 2016 through February 2016, Plaintiff Sambare typically received between approximately $40 to $50 per week in commissions. Defendants failed to include these commissions as part of Plaintiff Sambare's regular rate for the purpose of calculating Plaintiff Sambare's overtime rate.

145. Throughout his employment, Defendants failed to pay Plaintiff Sambare the proper overtime compensation at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek.

146. Many times Plaintiff Sambare complained to his manager at 1096 Atlantic Avenue that he was not receiving the overtime rate for his overtime hours worked that he was entitled to by law. His manager either ignored the complaints or replied, in sum and substance, "This company doesn't pay overtime."

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE

147. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

148. Defendants were required to pay Plaintiffs at a rate not less than the minimum wage rate under the FLSA for all hours worked.

149. Defendants willfully and knowingly failed to pay Plaintiff Sawadogo the required minimum wages under the FLSA for each hour worked.

150. Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

151. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

152. As a result of the unlawful acts of the Defendants, Plaintiff Sawadogo has been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

153. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

154. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

155. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect the FLSA Collective.

156. Defendants failed to include any commissions earned by members of the FLSA Collective in the regular rate Defendants used to calculate overtime rates.

157. Defendants failed to acknowledge all overtime hours worked on the paystubs of members of the FLSA Collective.

158. Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

159. Defendants willfully, knowingly and repeatedly refused to pay the FLSA Collective overtime compensation at the statutory rate of time-and-a-half for all hours worked in excess of forty hours per workweek, as required by the FLSA.

160. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

161. As a result of the unlawful acts of Defendants, members of the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## THIRD CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT – UNLAWFULLY RETAINED TIPS

162. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

163. Pursuant to 29 U.S.C. § 203(m), "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

164. By setting a policy and/or practice of improperly withholding portions of gratuities provided to members of the FLSA Tipped Employee Subclass, Defendants willfully and knowingly violated 29 U.S.C. § 203(m).

165. Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

166. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

167. As a result of the unlawful acts of the Defendants, members of the FLSA Tipped Employee Subclass have been deprived of gratuities in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## FOURTH CLAIM FOR RELIEF
### NEW JERSEY WAGE AND HOUR LAW – UNPAID MINIMUM WAGE

168. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

169. The minimum wage provisions set forth in the NJWHL and its supporting regulations apply to Defendants and the Putative NJ Class and NJ Tipped Employee Subclass.

170. Defendants were required to pay members of the Putative NJ Class and NJ Tipped Employee Subclass and at a rate not less than the minimum wage rate under the NJWHL for all hours worked.

171. Defendants willfully failed to pay members of the NJ Tipped Employee Subclass the minimum wage for each hour worked.

172. Defendants illegally claimed a tip credit against the minimum wage for its tipped employees, when such a credit was not legally permissible.

173. Defendants cannot avail themselves of the tip credit as Defendants unlawfully permitted management personnel to improperly take and retain tips earned by members of the NJ Tipped Employee Subclass and failed to advise members of the NJ Tipped Employee Subclass of the tip credit provisions pursuant to the NJWHL and the cases interpreting it.

174. Defendants failed to maintain proper employment records as required by the NJWHL.

175. As a result of the unlawful acts of the Defendants, members of the NJ Tipped Employee Subclass have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to the NJWHL.

## FIFTH CLAIM FOR RELIEF
### NEW JERSEY WAGE AND HOUR LAW – UNPAID OVERTIME

176. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

177. Defendants have engaged in a widespread pattern and practice of violating the NJWHL, as detailed in this complaint.

178. The overtime wage provisions set forth in the NJWHL apply to Defendants and protect members of the Putative NJ Class.

179. Defendants failed to include any commissions earned by members of the Putative NJ Class in the regular rate Defendants used to calculate overtime rates.

180. Defendants failed to acknowledge all overtime hours worked on the paystubs of members of the Putative NJ Class.

181. Defendants failed to pay members of the Putative NJ Class overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) each week, as required by the NJWHL.

182. As a result of the unlawful acts of Defendants, members of the Putative NJ Class have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to the NJWHL.

## SIXTH CLAIM FOR RELIEF
## NEW JERSEY WAGE AND HOUR LAW – UNLAWFULLY RETAINED GRATUITIES

183. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

184. Per N.J.A.C. 12:56-8.4(b) gratuities are property of the tipped employee and shall be restored to the tipped employee.

185. Defendants unlawfully and willfully permitted management personnel to improperly take and retain tips earned by members of the NJ Tipped Employee Subclass.

186. Defendants failed to restore gratuities to their New Jersey tipped employees.

187. By improperly withholding portions of gratuities provided to members of the proposed NJ Tipped Employee Subclass, Defendants violated N.J.A.C. 12:56-8.4(b).

188. Defendants failed to maintain proper records of gratuities as required by the N.J.A.C. 12:56-4.6.

189. As a result of the unlawful acts of the Defendants, members of the proposed NJ Tipped Employee Subclass have been deprived of gratuities in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, reasonable attorneys' fees, costs, and other compensation pursuant to N.J.S.A. 34:11-56a25.

**SEVENTH CLAIM FOR RELIEF**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**

190. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

191. The minimum wage provisions set forth in the NYLL and its supporting regulations apply to Defendants and the Putative NY Class.

192. Defendants were required to pay members of the Putative NY Class at a rate not less than the minimum wage rate under the NYLL for all hours worked.

193. Defendants willfully failed to record all hours worked on the paystubs of members of the Putative NY Class.

194. Defendants willfully failed to pay members of the Putative NY Class the NYLL minimum wage for each hour worked.

195. Defendants failed to maintain proper employment records as required by the NYLL §§ 195(4) and 661 and 12 N.Y.C.R.R. § 142-2.6.

196. By willfully failing to pay members of the Putative NY Class the NYLL-required minimum wage for all hours worked, Defendants have willfully violated NYLL §§ 650 *et seq.* and the supporting regulations, including but not limited to 12 N.Y.C.R.R. § 142-2.1.

197. As a result of the unlawful acts of the Defendants, members of the Putative NY Class have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to the NYLL.

## EIGHTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – UNPAID OVERTIME WAGE

198. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

199. The overtime provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and members of the Putative NY Class, including Plaintiffs Vincent and Sambare.

200. 12 N.Y.C.R.R. § 142-2.2, requires an employer to pay an employee overtime "at a wage rate of one and one-half times the employee's regular rate."

201. NYLL § 663 provides that "[if]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

202. Plaintiffs Vincent and Sambare and, upon information and belief, other members of the Putative NY Class, worked more than forty (40) hours a week while working for Defendants.

203. Defendants failed to pay Plaintiffs Vincent and Samabre, and upon information and belief, other members of the Putative NY Class, overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) each week, as required by the NYLL.

32

204. Defendants failed to maintain proper employment records as required by the NYLL §§ 195(4) and 661 and 12 N.Y.C.R.R. § 142-2.6.

205. By willfully failing to pay members of the Putative NY Class the NYLL-required overtime rate for all hours worked in excess of forty (40) in a week, Defendants have willfully violated 12 N.Y.C.R.R. § 142-2.2.

206. As a result of the unlawful acts of the Defendants, members of the Putative NY Class have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to NYLL §§ 198 and 663.

**NINTH CLAIM FOR RELIEF**
**NEW YORK LABOR LAW – WAGE THEFT PREVENTION ACT VIOLATION**

207. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

208. NYLL § 195(3) requires that employers furnish each employee with a statement with every payment listing, among other things, gross wages, deductions, and net wages, and upon request of an employee, an explanation of the computation of wages.

209. NYLL § 195(4) requires, among other things, that employers establish and maintain, for at least six (6) years, payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

210. NYLL § 661 requires that Defendants maintain, inter alia, true and accurate records of hours by each employee covered by an hourly wage rate, and the wages paid to all employees.

211. 12 N.Y.C.R.R. § 142-2.6 requires Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, inter alia, each employee's name, wage rate,

number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

212. 12 N.Y.C.R.R. § 142-2.7 requires Defendants to furnish each employee with a statement with every payment listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

213. Upon information and belief, Defendants failed to furnish the members of the Putative NY Class with the wage statement(s) required by NYLL § 195(3).

214. Upon information and belief, Defendants' failure to furnish the members of the Putative NY Class with the wage statement(s) required by NYLL § 195(3) was willful and intentional.

215. As a result of Defendants' failure to furnish the wage statements pursuant to NYLL § 195(3), members of the Putative NY Class are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(d).

## DEMAND FOR TRIAL BY JURY

216. Named Plaintiffs, on behalf of themselves and all others similarly situated, request a jury trial on all issues of fact and damages arising herein.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs, on behalf of themselves and all others similarly situated respectfully request that this Court grant the following relief:

(1)   That, at the earliest possible time, Collective Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all similarly-situated persons who are presently, or have been at any time during the six years immediately preceding the filing of this suit, up through and including the date of this court's issuance of court-

supervised notice, employed by Defendants as non-exempt employees.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime compensation and subjected to the retention of at least a portion of their tips;

(2)   Certification of this action as a class action pursuant to FRCP Rule 23 on behalf of the members of the Putative NJ Class, NJ Tipped Employee Subclass, and Putative NY Class;

(3)   Designation of: (i) NJ Class Representatives as representatives of the Putative NJ Class; (ii) NJ Subclass Representatives as representatives of the proposed NJ Tipped Employee Subclass; (iii) Plaintiffs Vincent and Sambare as representatives of the Putative NY Class; and (iv) counsel of record as Class Counsel for all proposed classes and subclasses;

(4)   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NJWHL, and NYLL;

(5)   Appropriate equitable and injunctive relief to remedy Defendant's violations of the FLSA and NJWHL;

(6)   An award of monetary damages to be determined at trial for wages owed, unpaid overtime compensation, penalties, liquidated damages and all other monies owed to Plaintiffs;

(7)   An award of prejudgment and post judgment interest;

(8)   An award of attorneys' fees and costs of this action;

(9)   Such other and further relief as this Court deems just and proper.


Dated: New York, New York
          February 4, 2020

Respectfully submitted,

**ARENSON, DITTMAR & KARBAN**


_____/s Avi Mermelstein___
By: Avi Mermelstein
200 Park Avenue, Suite 1700
New York, New York 10166
Tel:    (212) 490-3600
Fax:    (212) 682-0278
avi@adklawfirm.com
*Attorneys for Plaintiffs and the Putative Classes*